UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITY-COUNTY TAXI, INC. d/b/a ) <br> METRO WEST TRANSPORT, ) <br> ) <br>     Plaintiff, ) <br> ) <br>   vs. ) <br> ) <br> METROPOLITAN TAXICAB COMMISSION, ) <br> and CITY OF ST. LOUIS, MISSOURI, ) <br> ) <br>     Defendants. ) | Case No. 4:12-CV-408 JAR |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Metropolitan Taxicab Commission's Motion to Dismiss Count I of Plaintiff's First Amended Complaint [ECF No. 28] and Defendant City of St. Louis, Missouri's Motion to Dismiss Plaintiff's First Amended Complaint. [ECF No. 31] The motions are fully briefed and ready for disposition.

**Background**

In early January 2011, Plaintiff, after advising officials of Lambert-St. Louis International Airport ("Airport" or "City") that they were in violation of the Americans with Disabilities Act (ADA), presented to the City a business proposal to provide the Airport with wheelchair accessible taxicabs, both as a proprietary business venture and to remedy the absence of wheelchair accessible airport taxicabs. (Plaintiff's First Amended Complaint ("FAC"), Doc. No. 26, ¶ 6). In late January 2011, the Airport met with the Metropolitan Taxicab Commission ("Commission") to discuss taxicab compliance with the ADA. At this meeting, the Airport shared Plaintiff's business proposal with the Commission. (Id., ¶ 10) On March 8, 2011 the

Commission considered and tabled Plaintiff's business proposal until March 28, 2011. (Id., ¶ 17).

On March 28, 2011, the Commission enacted a provision in its Vehicle for Hire Code regulations for ADA compliance titled: "Chapter 13 – COMPLIANCE WITH THE AMERICANS WITH DISABILITIES ACT ("Chapter 13"). Chapter 13 establishes a process that opened to competition wheelchair accessible taxicab services at the Airport and requires any business providing wheelchair accessible services to obtain from the Commission a Certificate of Convenience and Necessity ("CCN"). (Id., ¶ 18)

In April 2011, the Commission granted a CCN to Plaintiff and others to operate wheelchair accessible taxicabs for the Airport and began enforcing the requirements and restrictions of Chapter 13 on those who were granted a CCN, including Plaintiff. (Id., ¶ 21) Plaintiff alleges the Commission's actions were taken in retaliation for Plaintiff's charge of an ADA violation. (Id.) Plaintiff further alleges that after granting Plaintiff a CCN, the Commission continued its retaliation by "imposing on Plaintiff the requirements and restrictions of Chapter 13," and "citing and harassing Plaintiff constantly and continuously thereafter for alleged violations," thereby impeding Plaintiff from "establishing his wheelchair accessible airport taxicab business venture, including scaring off his investors." (Id., ¶ 22).

Plaintiff filed charges with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission, alleging retaliation by the Commission. (Id., ¶ 23) Plaintiff alleges that the Commission retaliated against him by revoking Plaintiff's CCN. (Id., ¶24) Plaintiff appealed the revocation, which was sustained on June 13, 2012. (Id., ¶ 25)

Following this Court's dismissal of Counts I, II and III of Plaintiff's original complaint against Defendants alleging violations of due process, racial discrimination, and breach of fiduciary duty (Doc. No. 25), Plaintiff filed its First Amended Complaint on July 5, 2012,

alleging violations of due process (Count I) and retaliation (Count II). Both the Commission and the City move to dismiss Count I of the amended complaint. The City also moves to dismiss Count II.

**Legal Standard**

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). In ruling on a motion to dismiss, the Court views the allegations in the complaint liberally in the light most favorable to the plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir.2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir.2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir.2005) (citation omitted). Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir.2004). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995).

**Discussion**

**Count I - Due Process Violation**

To establish a due process claim, a plaintiff must show it was deprived of a property interest, and that the deprivation did not meet the requirements of due process. Stauch v. City of Columbia Heights, 212 F.3d 425, 429 (8th Cir. 2000) (citing Movers Warehouse Inc. v. City of

Little Canada, 71 F.3d 716, 718 (8th Cir. 1995)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. See e.g. Goldberg v. Kelly, 397 U.S. 254 (1970) (welfare recipients had a "property" interest in welfare payments created and defined by state statute).

In support of their motions, the City and the Commission argue Plaintiff fails to plead any facts demonstrating it has any entitlement or protected property interest in a Chapter 13 CCN. (Memoranda in Support of Motions to Dismiss, Doc. Nos. 29, 31, pp. 4-5) Plaintiff merely pleads that "any business providing wheelchair accessible service, as Plaintiff had proposed, needed to obtain from the Commission a Certificate of Convenience and Necessity . . ." (FAC, ¶12), that Plaintiff received a CCN along with another taxi company (Id., ¶ 21), and that "Defendants City and Commission revocation of Plaintiff's Chapter 13 CCN license constitutes a violation [of] Plaintiff's property rights and interests that are protected under the United States Constitution." (Id., ¶ 28) Defendants further argue that even assuming Plaintiff has properly pled a property interest, Plaintiff fails to establish a lack of due process because the facts as pled demonstrate Plaintiff was given notice of the revocation and an opportunity to challenge the revocation. (Memoranda in Support, p. 6; FAC, ¶¶ 24, 25)

Plaintiff responds that since the filing of the original complaint, the Commission has taken action beyond merely citing Plaintiff for violations of Chapter 13 by revoking Plaintiff's CCN, and depriving it "of the right to hold a CCN." (Response to Motion to Dismiss, Doc. Nos.

39, 41, p. 2) In support of its assertion that the revocation of its CCN violates its constitutionally protected property interest, Plaintiff cites the Court to <u>Boonstra v. City of Chicago</u>, 574 N.E.2d 689 (Ill.Ct.App. 1991), which held that a taxicab license and its assignability is a constitutionally protected property interest. (<u>Id</u>., p. 3).

In reply, Defendants maintain that Plaintiff fails to plead any facts demonstrating an entitlement or protected property interest in a Chapter 13 CCN license, particularly where, as here, the Commission has the discretion to issue and revoke a CCN. (Replies to Plaintiff's Response to Motion to Dismiss, Doc. Nos. 40, 43, p. 4) Defendants analogizes Plaintiff's situation to that of at-will employees who have no property right in continued employment for purposes of due process because they can be terminated at any time for any reason. (<u>Id</u>., pp. 3-4)

Plaintiff's reliance on <u>Boonstra</u> is misplaced. In reaching its conclusion that the taxicab license and its assignability was a constitutionally protected property right, the court in <u>Boonstra</u> considered the limits placed by the city on the number of taxicab licenses issued, the assignability rights expressly granted by the city, and the actions taken by the city to foster and participate in their assignment. <u>Id</u>. at 694. Under these particular circumstances, the court found the city had effectively created a public market place for the assignment of its taxicab licenses. <u>Id</u>. As a result, the licenses "in reality became more than just personal permits granted by a governmental body to a person to . . . carry on some business subject to regulation under the police power." <u>Id</u>. "In a functional sense, the taxicab licenses embraced the essence of property in that they were securely and durably owned and marketable." <u>Id</u>. at 694-95 (citations omitted). This is not the case here.

The Court finds the Fifth Circuit's discussion of the features of a certificate of public necessity and convenience, and whether those features equate to a privilege or property right, in <u>Dennis Melancom, Inc. v. City of New Orleans</u>, 703 F.3d 262 (5th Cir. 2012), instructive:

> A certificate of public convenience and necessity is in the nature of a personal privilege or license, which may be amended or revoked by the power authorized to issue it, and the holder does not acquire a property right. Such certificate is issued for the purpose of promoting the public convenience and necessity, and not for the purpose of conferring upon the holder any propriety interest.

Id. at 270 (quoting Hutton v. City of Baton Rouge, 47 So.2d 665, 668-69 (La. 1950). In concluding that the plaintiffs' interest in their CCNs did not fall within the scope of a constitutionally protected property right, the Court in Melancom found the city's authority to exercise control over CCNs extended to such a degree that their holders possessed, if anything, only a "limited bundle of rights in connection therewith." Id. at 272. "Any resulting interest Plaintiffs hold in their [CCNs] has emerged from a regulatory framework that itself allows the City to limit or revoke that interest." Id. at 274. See also Minneapolis Taxi Owners Coalition of City of Minneapolis, 572 F.3d 502 (8th Cir. 2009), where the Eighth Circuit concluded that the heavily regulated nature of the taxicab industry precluded the development of a protected property right for purposes of due process. Id. at 510.

Because Plaintiff has no protected property interest in its CCN, there is no due process violation. Therefore, the motions to dismiss as to Count I will be granted.

**Count II - Retaliation**

To establish a prima facie case of retaliation, a plaintiff must show: (1) that he or she engaged in statutorily protected activity; (2) that he or she suffered adverse action; and (3) that a causal connection existed between the protected activity and the adverse action. McClure v. Career Systems Development Corp., 447 F.3d 1133, 1137 (8th Cir. 2006) (citing Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 760 (8th Cir. 2004).

The Court previously ruled that Plaintiff failed to state a claim for retaliation based on the City's denial of a contract opportunity to Plaintiff, and the enactment of Chapter 13, but granted

- 6 -

Plaintiff leave to amend its pleading to make its claim of retaliation more definite as it relates to the revocation of its CCN. In Count II of the amended complaint, Plaintiff alleges the "Defendants denial of a contract and business opportunity to Plaintiff, their creating Chapter 13 and its attendant requirements and restrictions, and the Commission's revocation of Plaintiff's Chapter 13 CCN, were actions taken by Defendants in retaliation for Plaintiff having brought to Defendants' attention that they were in violation of the American with Disabilities Act by not having wheelchair accessible taxicabs to service the Airport and metropolitan area." (FAC, ¶ 33) The City has moved to dismiss this claim as directed to the City.

In support of its motion, City argues Plaintiff fails to identify the source of any right that underlies its retaliation claim, and fails to specify any actions taken by the City in retaliation against Plaintiff. (Memorandum in Support, Doc. No. 32, pp. 6-7)

Plaintiff replies by referencing its allegation that the City retaliated against Plaintiff for bringing to its attention violations of the ADA by denying Plaintiff a contract to provide wheelchair accessible transportation services at the airport and by participating with the Commission in the enactment of Chapter 13 which led to the revocation of his Chapter 13 CCN. (Response, Doc. No. 41, p. 3) As discussed above, however, the Court has already ruled that these allegations fail to state a claim for retaliation. Even construing Plaintiff's complaint liberally, Plaintiff has alleged that the Commission revoked its Chapter 13 CCN, not the City. For this reason, the Court finds Plaintiff has failed to state a claim for retaliation against the City and the City's motion to dismiss will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Metropolitan Taxicab Commission's Motion to Dismiss Count I of Plaintiff's First Amended Complaint [28] and Defendant City of

St. Louis, Missouri's Motion to Dismiss as to Count I of Plaintiff's First Amended Complaint [31] are **GRANTED**, and Count I is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant City of St. Louis, Missouri's Motion to Dismiss as to Count II of Plaintiff's First Amended Complaint [31] is **GRANTED**. Defendant City of St. Louis, Missouri is dismissed without prejudice.

Dated this 20th day of February, 2013.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE