## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| CITY-COUNTY TAXI, INC., d/b/a METRO WEST TRANSPORT, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 4:12-CV-408-JAR |
| v. | ) ) ) | |
| METROPOLITAN TAXICAB COMMISSION, and CITY OF ST. LOUIS, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Metropolitan Taxicab Commission's Motion for Summary Judgment. [ECF No. 60] The motion is fully briefed and ready for disposition. For the following reasons, the motion will be granted.

**Procedural background**

In its original complaint against Defendants Metropolitan Taxicab Commission (MTC) and the City of St. Louis, Plaintiff alleged violations of due process, racial discrimination, breach of fiduciary duty, and retaliation arising from Plaintiff's proposal to operate a wheelchair accessible transportation business from Lambert-St. Louis International Airport. (Doc. No. 1) On Defendants' motions, the Court dismissed Plaintiff's claims for violations of due process, racial discrimination, and breach of fiduciary duty. With regard to Plaintiff's claim for retaliation, the Court ruled Plaintiff failed to state a claim based on the City's denial of a contract opportunity to Plaintiff, and the enactment of a provision in its Vehicle for Hire Code establishing regulations for ADA compliance (Chapter 13). The Court granted Plaintiff leave to amend its pleading to

make its claim of retaliation more definite as it related to the revocation of its Chapter 13 certificate of convenience and necessity ("CCN"). (Doc. No. 25) Plaintiff filed its First Amended Complaint on July 5, 2012, alleging violations of due process (Count I) and retaliation (Count II). (Doc. No. 26) The Court dismissed Plaintiff's claim for violations of due process, finding Plaintiff had no protected property interest in its CCN. (Doc. No. 50) The Court also dismissed Plaintiff's claim for retaliation against the City for failure to specify any actions taken by the City in retaliation against Plaintiff. (Id.) MTC now moves for summary judgment on Plaintiff's remaining claim for retaliation.

**Facts**

In support of its motion for summary judgment, MTC submitted a Statement of Undisputed Facts. (Statement of Undisputed Facts (SUF), Doc. No. 61) Plaintiff, however, did not respond to MTC's Statement of Facts or provide the Court with a statement of material facts as to which it contends a genuine dispute exists. Accordingly, Plaintiff has not met the requirements of Local Rule 7-4.01(E)[1], and is deemed to have admitted all facts in MTC's statement of uncontroverted facts. Turner v. Shinseki, 2010 WL 2555114, at *2 (E.D.Mo. June

---

[1] E.D. Mo. L.R. 7-4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

22, 2010) (citing <u>Deichmann v. Boeing Co.</u>, 36 F.Supp.2d 1166, 1168 (E.D.Mo.1999)). With this in mind, the Court accepts the following facts as true for purposes of summary judgment:

The MTC is a political subdivision established by the Missouri legislature which has authority over licensing, regulation, and enforcement of vehicle for hire services in the St. Louis area. The MTC has adopted the Vehicle for Hire Code which codifies the rules with respect to licensing, regulation and enforcement of vehicle for hire service.

In early January 2011, Plaintiff, after advising officials of Lambert-St. Louis International Airport ("Airport" or "City") that they were in violation of the Americans with Disabilities Act (ADA), presented to the City a business proposal to provide the Airport with wheelchair accessible taxicabs, both as a proprietary business venture and to remedy the absence of wheelchair accessible airport taxicabs. In late January 2011, the Airport met with the MTC to discuss taxicab compliance with the ADA. At this meeting, the Airport shared Plaintiff's business proposal with the Commission. On March 8, 2011 the Commission considered and tabled Plaintiff's business proposal until March 28, 2011.

On March 28, 2011, the MTC created a provision in its Vehicle for Hire Code establishing regulations for ADA compliance titled: "Chapter 13 – COMPLIANCE WITH THE AMERICANS WITH DISABILITIES ACT ("Chapter 13"). Chapter 13 provides in relevant part as follows:

> I. In order that the MTC may determine the extent of the demand for handicap vehicles in its market area, all vehicles operating under this type of CCN shall keep a written log in each permitted vehicle in which every trip shall be recorded indicating clearly whether or not it was a handicap trip. Such reports are to be submitted to the MTC weekly for a period of 18 months from the inception period of the CCN or for such longer period as the Director may provide in his Rules. Failure to accurately document a trip shall be a Class II violation. Operations pursuant to a CCN under this chapter of the Code will be considered a pilot program for the first 18 months and permits initially issued may be increased or reduced as a result of the data collected under this program.

A Director's Rule promulgated under Chapter 13 provides, in relevant part as follows:

> Chapter 13, section 1301.I. Keeping a log of trips for handicap vehicles is an essential part of holding a CCN under this Chapter since the MTC has implemented the pilot program under this Chapter in an attempt to discover the depth of need for handicap accessible vehicles in its area so the public can be properly served. Without the data on handicap use being made available to the Director in a timely fashion, the goal of this pilot program will never be achieved. The MTC has made failure to timely file trip reports under this chapter a Class II violation of the Code.
>
> 1. Timely filing of reports – reports on MTC designated forms will be due in the Director's hands by Friday of the week following the week the report is dated. For example, a report for the week of June 1 to June 7 where June 1 is a Monday, will be due on Friday, June 12 and will be late at close of business that day.
>
> 2. Each late report will be a separate violation of the Code.
>
> 3. As a Class II violation the first violation shall result in a $100 administrative penalty; the second violation shall result in a $150 administrative penalty; the third violation shall result in a $200 administrative penalty and the fourth violation shall result in revocation of the Chapter 13 CCN.

In April 2011, the MTC granted a CCN to Plaintiff and others to operate wheelchair accessible taxicabs for the Airport and began enforcing the requirements and restrictions of Chapter 13 on those who were granted a CCN, including Plaintiff.

Plaintiff was familiar with the reporting requirements under Chapter 13. Plaintiff did not report the required trip logs.  Plaintiff received four citations in January 2012, for repeated failures to report the trip log reports as required under Chapter 13. MTC advised Plaintiff he was in violation of the Chapter 13 reporting requirements. On January 17, 2012, the Commission sent to Plaintiff a notice of revocation of his CCN license. Plaintiff subsequently received two additional citations for failing to file trip logs as required under Chapter 13.

Plaintiff appealed the revocation of his license and was granted an evidentiary hearing before a Hearing Officer who found that Plaintiff had committed six violations of the provisions of Chapter 13. The Hearing Officer imposed a penalty on one citation but as to the remaining

- 4 -

five citations suspended imposition of sentence until July 17, 2012 to give Plaintiff an opportunity to file the required trip logs and come into compliance with Chapter 13. Plaintiff continues to operate wheelchair accessible taxicabs under his Chapter 13 CCN as a result of his having filed an appeal of the revocation action and the MTC having stayed enforcement of the revocation of the Chapter 13 CCN while the administrative appeal is pending. As of January 17, 2012, the date that Plaintiff was issued notice of the revocation of his Chapter 13 CCN, no other taxi cab company holding a Chapter 13 CCN had failed to file trip logs as required by Chapter 13.

Plaintiff's failure to comply with the Chapter 13 trip log filing requirement was the only reason MTC took action on January 17, 2012 to revoke Plaintiff's Chapter 13 CCN.

**Legal Standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988).  If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

**Discussion**

Plaintiff brings its claim of retaliation under 42 U.S.C. § 1983, alleging the MTC revoked its Chapter 13 CCN in retaliation for "having brought to Defendants' attention that they were in violation of the American [sic] with Disabilities Act by not having wheelchair accessible taxicabs to service the Airport and metropolitan area." (First Amended Complaint (FAC), Doc. No. 26, ¶¶ 24-25, 31, 33)

In support of its motion for summary judgment, the MTC argues that Plaintiff's retaliation claim under § 1983 fails as a matter of law, first, because this Court has already ruled that Plaintiff does not have a protected property interest in its Chapter 13 CCN, and second, because § 1983 does not afford a remedy where the governing statute provides an exclusive remedy for violations of its terms. (Doc. No. 62, pp. 7-10) Specifically, the MTC argues that Plaintiff is attempting to bypass the remedial scheme provided under the Americans with Disabilities Act, here Title II of the ADA[2], by asserting a § 1983 claim. (Id., p. 7) MTC relies on Foster v. Wyrick, 823 F.2d 218 (8th Cir. 1987) and Grey v. Wilburn, 270 F.3d 608 (8th Cir. 2001).

In Foster, a black inmate brought a § 1983 action alleging race discrimination in the assignment of inmate jobs under a disparate impact theory. The Eighth Circuit noted that "Title VII provides a comprehensive remedial system for the enforcement of rights created by Title VII," 823 F.2d at 221, and went on to hold that a Title VII disparate impact claim may not be asserted in a § 1983 action. Id. at 222. The Eighth Circuit applied this reasoning to preclude the

---

[2] MTC contends Plaintiff's retaliation claim falls under Title II of the ADA, which provides in part that no person or private or public entity may discriminate against any individual because such individual has opposed any act or practice made unlawful by the ADA. 42 U.S.C. § 12203(a); 28 C.F.R. § 35.134(a). (Doc. No. 62, p. 8, n. 1)

assertion of a Title II ADA claim in a §1983 action in <u>Grey</u>. In that case, Grey, who suffered from bipolar affective disorder, brought an action against the Office of the Missouri Secretary of State and two of its employees under § 1983, the ADA and section 504 of the Rehabilitation Act, alleging they discriminated against him on the basis of his disability in denying his application for re-registration as a securities agent in Missouri. INoting that "the comprehensive enforcement mechanisms provided under . . . the ADA suggest Congress did not intend violations of those statutes to be also cognizable under § 1983," the Eighth Circuit refused to recognize a constitutionally based § 1983 claim reliant on the same factual allegations that gave rise to Grey's claims under the ADA. 270 F.3d at 610 (citing <u>Davis v. Francis Howell School District</u>, 104 F.3d 204, 206 (8th Cir. 1997)).

Plaintiff responds that the MTC's argument that it should pursue its §1983 retaliation claim under the ADA is without merit because as a corporate entity, Plaintiff lacks standing to pursue a claim under the ADA, which proscribes discrimination against "qualified individual[s]" with disabilities. (Doc. No. 66, p. 4)  The MTC replies that corporate status, by itself, does not preclude Plaintiff from seeking relief under the ADA, citing <u>RHJ Medical Center, Inc. v. City of Dubois</u>, 78 Fed.R.Serv.3d 113 (W.D. Pa. 2010) and <u>Joseph's House and Shelter, Inc. v. City of Troy, New York</u>, 641 F.Supp.2d 154 (N.D. N.Y. 2009). (Doc. No. 67, p. 4)

The MTC is correct that the enforcement provisions of Title II of the ADA do not limit relief to "qualified individuals with disabilities." <u>See</u> <u>MX Group, Inc. v. City of Covington</u>, 293 F.3d 326, 335 (6th Cir. 2002); <u>Innovative Health Systems, Inc. v. City of White Plains</u>, 117 F.3d 37, 47 (2nd Cir. 1997), *superseded on other grounds by* <u>Zervos v. Verizon New York, Inc.</u>, 252 F.3d 163, 171 (2nd Cir. 2001)). The regulations passed pursuant to the ADA specifically extend the protections of the Act to entities or associations. <u>See</u> <u>Addiction Specialists, Inc. v. Township</u>

of Hampton, 411 F.3d 399, 407 (3rd Cir. 2005) (citing 28 C.F.R.  35.130(g)). See also MX Group, Inc., 293 F.3d at 335 ("Because Plaintiff has presented evidence that it was denied a zoning permit because it cares for and/or associates with individuals who have disabilities, Plaintiff has standing to bring this suit on its own behalf."). However, these types of cases involve plaintiffs who are alleging they have been discriminated against because of their association with disabled individuals. For example, in Addiction Specialists, 411 F.3d 399, the court held that a methadone clinic has standing to sue for damages under the ADA so long as it was discriminated against based on its association with disabled parties. The MTC cites no case that confers standing on the Plaintiff under the ADA under the circumstances of this case.

The MTC further argues that even if Plaintiff could state a claim for retaliation under § 1983, the claim fails because Plaintiff cannot establish a causal connection between its charge of an ADA violation and the notice of revocation.[3] (Doc. No. 62, p. 11) To establish a causal connection, Plaintiff must prove that a retaliatory motive played a part in the adverse action. Hughes v. Stottlemyre, 454 F.3d 791, 797 (8th Cir. 2006) (citing Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 896-97 (8th Cir.2002)).  The MTC points out that instead of treating Plaintiff adversely, four months after being advised by Plaintiff that it was not in compliance with the ADA, the MTC granted Plaintiff a Chapter 13 CCN (SUF, ¶ 6) and has to date continued to allow Plaintiff to operate under its CCN. (Id., ¶ 16) The MTC states it only took action against Plaintiff after Plaintiff refused to turn over the trip logs as required. (Id., ¶ 18)

---

[3] To establish a prima facie case of retaliation, a plaintiff must show that: (1) the plaintiff was "engaged in protected conduct;" (2) the plaintiff suffered a "materially adverse . . . action;" and (3) "the adverse action was causally linked to the protected conduct." Pye v. NuAire, Inc., 641 F.3d 1011, 1021 (8th Cir. 2011); Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999). For purposes of this motion, MTC concedes Plaintiff engaged in protected conduct by bringing to its attention that they were in violation of the ADA, and suffered an adverse action, that is, the revocation of its Chapter 13 CCN. (Doc. No. 62, p. 11)

Thus, Plaintiff's intervening unprotected conduct, that is, its noncompliance with the Chapter 13 trip log filing requirement (id., ¶¶ 8-10, 13-15), eroded any causal connection that could be alleged to support a claim of retaliation. See Kiel, 169 F.3d at 1136. (Doc. No. 62, p. 11)

In response, Plaintiff contends there is a factual dispute as to whether Chapter 13 was enacted for the legitimate purpose of regulating accessible vehicles, or for retaliating against Plaintiff. (Doc. No. 66, p. 9) In particular, Plaintiff points to the fact that the MTC altered the "normal CCN process" by requiring a demonstration of convenience and necessity through the submission of monthly reports *after* granting the CCN rather than before. (Id.) Plaintiff argues that Chapter 13's reporting provisions required him to choose between exposing "proprietary information," i.e., passenger pick-up logs, or "fac[ing] the penalty of revocation of his CCN if he failed to do so." (Doc. No. 66, p. 6)  Plaintiff submits an email from the President of St. Louis County Cab, also a member of the MTC, to the Director of the MTC, reflecting what Plaintiff characterizes as an insistence by County Cab on the monthly reporting requirement and sanctions for failure to comply. (Exhibit B, Doc. No. 66-2)  Plaintiff further argues that the reporting requirement does not expose County Cab, the only other Chapter 13 CCN license holder, to the same "business risks" as it does Plaintiff, because County Cab's wheelchair accessible vehicles were provided under a grant from Paraquad (Exhibit A, Doc. No. 66-1), whereas Plaintiff had to purchase its wheelchair accessible vehicles.[4] (Doc. No. 66, pp. 6-7)

---

[4] MTC objects to Plaintiff's Exhibits A and B as inadmissible hearsay. Brooks v. Tri-Systems, Inc., 425 F.3d 1109, 1111 (8th Cir. 2005) (inadmissible evidence may not be used to support or defeat a motion for summary judgment). (Doc. No. 67, pp. 1-2) Further, no attempt was made by Plaintiff to authenticate the documents or establish any exception to the hearsay rule. The Court finds these exhibits constitute inadmissible hearsay and are not relevant to whether the MTC retaliated against Plaintiff by revoking its Chapter 13 CCN. Accordingly, the Court will not consider them in ruling the motion for summary judgment. See Manuele v. City of Jennings, 2012 WL 113538, at *13 (E.D. Mo. Jan. 13, 2012).

As further evidence that Chapter 13 was targeted at Plaintiff, Plaintiff specifically notes that under paragraph K of Chapter 13, any CCN holder choosing to replace an existing vehicle with an accessible vehicle is required to file month trip logs, yet the MTC has not addressed the compliance of those companies, focusing instead on reporting from Plaintiff, "the Chapter 13 CCN holder." (Id., p. 8) In addition, Plaintiff maintains that nothing in Chapter 13 requires other taxicab companies to be ADA compliant. Under paragraph L of Chapter 13, only Chapter 13 CCN holders can be penalized for refusing to provide transportation to disabled passengers by an accessible vehicle, whereas larger taxicab companies can refuse and not suffer a penalty because they have no accessible vehicles in their fleet. (Doc. No. 66, p. 8)

Finally, Plaintiff argues that the temporal proximity between the presentation of its business proposal and the enactment of Chapter 13 and its revocation penalty provision establishes causation. (Doc. No. 66, pp. 8-9)

In reply, MTC states that in the Eighth Circuit generally, more than a temporal connection between the protected conduct and the adverse action is required to present a genuine factual issue on retaliation, Kiel, 169 F.3d at 1136 (citing Feltmann v. Sieben, 108 F.3d at 970, 977 (8th Cir. 1997)); Nelson v. J.C. Penney Co., Inc., 75 F.3d 343, 346–47 (8th Cir. 1996)), and that based on the undisputed facts, Plaintiff cannot establish that the revocation of its Chapter 13 CCN was causally linked to its raising allegations of non-compliance with the ADA. (Doc. No. 67, pp. 5-8) Moreover, Plaintiff's non-compliance with Chapter 13 serves to erode any causal connection suggested by the temporal proximity of protected conduct and adverse action. (Id., p. 8)

Plaintiff continues to direct its arguments at the enactment of Chapter 13; however, this Court has already ruled that the adverse action at issue here is MTC's revocation of Plaintiff's

Chapter 13 CCN, and *not* the denial of a contract opportunity or the enactment of Chapter 13. (See Memorandum and Order of February 20, 2013, Doc. No. 50) Based on the record before it, the Court concludes that no jury could reasonably find in favor of Plaintiff on its claim of retaliation. It is undisputed that Plaintiff was familiar with the reporting requirements under Chapter 13 but did not turn over the logs as required and failed to file the required trip logs. It is also undisputed that in January 2012 Plaintiff was cited for repeated violations of the Chapter 13 reporting requirements. On January 17, 2012, the Commission issued Plaintiff a notice of revocation of his CCN license. Plaintiff appealed the revocation of his license and was granted until July 17, 2012 to come into compliance with Chapter 13. Finally, it is undisputed that Plaintiff's failure to comply with the Chapter 13 trip log filing requirement was the only reason MTC took action to revoke Plaintiff's Chapter 13 CCN. Thus, Plaintiff's claim of retaliation fails.

Plaintiff also continues to argue that it has a protectable property interest in its CCN and attempts to distinguish Minneapolis Taxi Owners Coalition, Inc. v. City of Minneapolis, 572 F.3d 502 (8th Cir. 2009), a case cited in the Court's previous order, from this case. (Doc. No. 66, p. 10) To the extent Plaintiff is asking the Court to reconsider its previous ruling that there was no due process violation, that request will be denied.

**Conclusion**

For the foregoing reasons, Defendant Metropolitan Taxicab Commission's Motion for Summary Judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Metropolitan Taxicab Commission Motion for Summary Judgment [60] is **GRANTED**.

- 12 -

An appropriate Judgment will accompany this Memorandum and Order.

_____
**JOHN A. ROSS
UNITED STATES DISTRICT JUDGE**

Dated this 25th day of July, 2013.